STATE of Missouri, Respondent,

v.

Sam E. SPARKS, Appellant.

No. 48586.

Missouri Court of Appeals,
Eastern District,
Northern Division.

May 21, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 12, 1985.

Case Transferred to
Supreme Court
Sept. 10, 1985.

Case Retransferred to Court of Appeals
Jan. 15, 1986.

Original Opinion Reinstated
Jan. 17, 1986.

**732**

Kaveney, Beach, Russell, Bond & Mittleman, Mark D. Mittleman, St. Louis, for appellant.

Mark Richardson, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Sam E. Sparks, was convicted, after a jury trial, of disposing of stolen property under § 570.080, RSMo (1978). He was sentenced to six months in the county jail. On appeal he contends (1) the court lacked jurisdiction because he committed no acts in Missouri, (2) the court gave an erroneous verdict-directing instruction, (3) the court erred in allowing the prosecutor to comment in closing argument on defendant's failure to call defendant's brother as a witness, and (4) plain error arose in a comment by the prosecutor during closing argument in which he allegedly referred to defendant as "trash." We reverse and remand.

The sufficiency of the evidence is not challenged. The evidence, viewed in the light most favorable to the verdict, shows defendant, his brother Paul Sparks, and Donald Ray Thomas met at defendant's house in Quincy, Illinois, and planned the theft of four pregnant sows from a farm in Rockport, Illinois. They agreed the sows would be taken to Missouri and sold, and the proceeds divided among them. Defendant loaned his truck to his brother and Thomas and gave them gas money. He also told them where to find the sows. Paul Sparks and Thomas stole the hogs, then took them to a livestock order-buyer in Monticello, Missouri to sell. The order-buyer refused to purchase the sows because they were pregnant.

Paul Sparks and Thomas left the sows at Monticello and returned to defendant's house to tell defendant of their difficulty. The three discussed the situation, then two phone calls were made to Monticello to make arrangements to have someone take the sows to an auction barn in Shelbina, Missouri. Defendant apparently did not make either call.

Paul Sparks and Thomas went to Shelbina to pick up a check for the sows, but the Shelby County Sheriff would not let them claim it. The check was made out to defendant. Defendant later went to Shelbina to claim the check, but the sheriff refused to let him take it.

■ Defendant first claims the trial court lacked jurisdiction because defendant committed no acts in Missouri.

Defendant's criminal liability is derived from two statutes. The first is § 562.036, RSMo (1978):

A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both.

The other section, in pertinent part, is § 562.041, RSMo (1978):

1. A person is criminally responsible for the conduct of another when

(1) The statute defining the offense makes him so responsible; or

(2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Based on these sections, defendant is criminally responsible for the acts of the others, regardless of whether he was present at the time of the commission of the crime. *State v. Harris*, 602 S.W.2d 840, 845 (Mo.App.1980). Their acts are his acts. Their guilt is imputed to him. *State v. Esker*, 658 S.W.2d 49, 54 (Mo.App.1983).

■ The issue then is not whether defendant committed the crime for which he was convicted but whether a Missouri court has jurisdiction to try him for that offense. Clearly, Missouri is not constitutionally barred. In the oft-cited case of *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911), the Court stated: "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."

Further, this case is unlike *State v. Kleen*, 491 S.W.2d 244 (Mo.1973). In *Kleen* the defendant was convicted of an insufficient funds check charge. Part of the elements of the offense were initiated in Missouri. The acts necessary to complete the offense and to make the instrument in question a check were committed in the state of Tennessee. The court held that Missouri did not have jurisdiction. *Compare State v. Kirksey*, 647 S.W.2d 799 (Mo.banc 1983).

Here all the elements necessary to complete the crime occurred in Missouri. As previously stated, the acts of Paul Sparks and Thomas became the acts of defendant. The fact that defendant was not physically present in the state of Missouri until after the crime was completed is immaterial. His constructive presence was sufficient to acquire jurisdiction. Defendant's first point is denied.

■ The next point which we consider alleges error in the verdict-directing instruction. The verdict director, which combined MAI–CR 2.12 and MAI–CR 24.10, in pertinent part read:

### INSTRUCTION NO. 7

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 29, 1983, in the County of Shelby, State of Missouri, the defendant, or others, disposed of four (4) pregnant sows, and

Second, that the property was that of another and had been stolen, and

Third, that at the time defendant, or others, disposed of this property, the defendant knew or believed it had been stolen, and

Fourth, that the defendant, or others, disposed of the property for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely, and

Fifth, that the property had a combined value of at least One Hundred Fifty Dollars,

then you are instructed that the offense of receiving stolen property has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Sixth, that with the purpose of promoting or furthering the commission of

receiving stolen property, the defendant aided or encouraged other persons in committing that offense,

then you will find the defendant guilty of receiving stolen property.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions submitted in this instruction, you must find the defendant not guilty of that offense.

The Notes on Use for MAI–CR 2d 2.12 discuss the various possibilities when a defendant is being held responsible for the conduct of others. Example 6(a) is the appropriate one in the present case. It states:

Where the evidence shows the conduct of the offense was committed entirely by someone other than the defendant and the sole basis for defendant's liability is his aiding the other person or persons (as where the defendant is not even present but planned the offense, or where he is the lookout or driver of the getaway car in a robbery or burglary) then all the elements of the offense should be ascribed to the other person or persons and not to the defendant.

This direction of MAI–CR 2d was not followed here. The verdict director allows the jury to find defendant guilty if "the defendant, or others, disposed of four (4) pregnant sows."

There is no evidence the defendant "disposed" of the sows. The evidence only showed he helped plan and aided others in carrying out the crime. MAI–CR 2d 2.12, Note on Use 6(a). The giving of this verdict director was thus erroneous.

"The basic principle applicable to the submission of instructions is that they should not be given if there is no evidence to support them. Instructions must be supported by substantial evidence and reasonable inferences to be drawn therefrom. Instructions which are at variance with the charge or which are broader in scope than the evidence are improper unless it is shown that an accused is not prejudiced

thereby." *State v. Daugherty,* 631 S.W.2d 637, 639–40 (Mo.1982) (citations omitted).

Since there is no evidence to support the portion of the instruction allowing the jury to find the defendant disposed of the sows, the jury was allowed to speculate as to things defendant might have done which were not supported by evidence. *See State v. Dickerson,* 649 S.W.2d 570 (Mo.App. 1983), where the instruction did not conform to the evidence.

The State counters defendant's argument by claiming an innocent agent was involved here—the person who transported the sows from Monticello to Shelbina. The State claims this means the offense was not committed entirely by someone other than the defendant. The State claims defendant and others committed the crime through an innocent agent. But MAI–CR 2d 2.12, Note on Use 8(a) states clearly the instruction does not apply to cases involving innocent agents. Furthermore, Paul Sparks and Thomas had "disposed" of the sows when they left them at Monticello, prior to any act by an innocent agent.

We therefore conclude that the trial court committed prejudicial error in instructing the jury. In addition to the error noted, the instruction failed to identify the "others." Here the identities of the others, Paul Sparks and Thomas, are clearly shown by the evidence. At retrial they should be referred to by name in the instruction.

Although we are reversing based upon instructional error, we will briefly address defendant's other points in order to prevent their reoccurrence at retrial of this case.

Defendant claims error in allowing the prosecutor to comment in closing argument, over objection, on defendant's failure to call his brother Paul Sparks as a witness. Defendant claims Paul Sparks was equally available to the State and thus it was improper for the State to raise an inference from his failure to testify.

The comment will be quoted in the context of an earlier remark by defense counsel.

[Defense counsel]: Obviously Sam Sparks denies having done anything illegal. He got on the witness stand, denied it for you. More he cannot do. The State brings the charges. Sam Sparks can only meet them and get on the stand and say that he didn't do it. What more can he [do]?

\*     \*     \*     \*     \*     \*

[Prosecutor]: He asked you one more question and I'm going to answer it. What more could the defendant do than to get on the stand and deny he was guilty? I'm going to tell you. He could have brought his brother over here to testify. His brother is the one that supposedly corroborates all this cock and bull story that he's been telling you.

\*     \*     \*     \*     \*     \*

So there was something else he could have done, but he didn't. I submit to you that is because he knew he wouldn't get favorable testimony from Paul Sparks. He doesn't want to face a perjury charge on top of the time he's already doing.

For a general summary of the law in this area, we cite *State v. Webster*, 659 S.W.2d 286, 288–89 (Mo.App.1983):

It should be noted that the trial court has broad discretion in determining whether the facts warrant invocation of an unfavorable inference and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted.

Further, it has been established by case law that the prosecuting attorney may properly argue an adverse inference from the defendant's failure to produce a witness who would be reasonably expected to give testimony in the defendant's favor. Such comments are permissible because a logical inference can be drawn from a failure to call these witnesses to testify that their testimony would be damaging rather than favorable. However, such an inference does not arise and may not be argued if the witness is equally available to the defendant and the state. The term 'equally available'

means more than susceptibility to process, and is resolved by considering three factors: (1) the one party's superior ability to know or identify the witness, (2) the nature of the testimony that the witness may be expected to give, and (3) the relationship between the particular party and the witness which indicates that the witness would be more likely to testify more favorably for one party than another. (Citations omitted.)

■ The tests set forth in *Webster* are derived from an earlier case, *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647 (1942). These tests should be viewed in light of the modern discovery in criminal cases. *State v. Ganaway*, 556 S.W.2d 67, 69–70 (Mo.App.1977). The extensive discovery now available makes the first two tests largely obsolete. *Id.* The third test is not met in this case. Paul Sparks was an endorsed State's witness who had pleaded guilty and been imprisoned in Illinois for the theft of the sows. The State had a signed statement from Paul Sparks implicating the defendant. From the record before us he was just as available to the State as Donald Ray Thomas who testified as a State's witness. The mere fact that Paul Sparks and defendant are brothers does not make him more available to defendant, particularly where they are both criminally liable. *See State v. Gilmore*, 661 S.W.2d 519 (Mo.banc 1983), where Norman Gilmore testified as a State's witness in a capital murder trial which resulted in his brother George being sentenced to death.

In oral argument on appeal, the State concedes the equal availability of Paul Sparks, but argues that it was retaliatory to defense counsel's argument "What more can he do." This is doubtful under the facts of this case and therefore the argument should be avoided on retrial.

■ Defendant's final point alleges plain error arising from a remark by the prosecutor which defendant claims was an appeal to the jurors' passion and prejudice. The prosecutor commented in closing argument:

Send a message to Sam Sparks and those of his kind, 'Don't bring your stolen property to Shelby County and try to sell it, because if you do you're going to be found guilty and you're going to get sent to the penitentiary. We don't want this kind of trash here and we don't need it.[']

By the use of the pronoun "it," the prosecutor was apparently referring to stolen property rather than the defendant when he used the word "trash." In any case it does not rise to the level of plain error. On retrial the use of the word should be avoided or it should be made clear that it is not an epithet referring to defendant.

The conviction of defendant is reversed and the case is remanded for a new trial.

DOWD, P.J., and CRIST, J., concur.