**STATE of Missouri, Plaintiff–
Respondent,**

**v.**

**Timothy L. COX, Defendant–Appellant.**

**No. WD 43676.**

Missouri Court of Appeals,
Western District.

Oct. 15, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Robert G. Duncan, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before BERREY, P.J., and BRECKENRIDGE, and KENNETH W. SHRUM, JJ.

KENNETH W. SHRUM, Special Judge.

The defendant Timothy L. Cox appeals a judgment, entered pursuant to jury verdicts, sentencing him to 12 years for first degree assault (Count I), 20 years for armed criminal action (Count II), and 10 years for kidnapping (Count III).[1] The appeal raises two questions:

(1) Was the defendant prejudiced by the trial court's use, in the verdict directing instructions, of disjunctive language drawn from MAI–CR3d 304.04, modified according to Notes on Use 7(c), when the evidence showed that other persons committed the elements of each crime and the defendant's involvement was that he acted with the others or aided them in the commission of the crimes?

(2) Was Count III of the amended information insufficient to charge kidnapping because it omitted the word *physical* from the final clause of the approved charge, MACH–CR 19.20, "for the purpose of inflicting physical injury on [the victim]"?

Although the challenged instructions and information deviate from the approved forms, we conclude the defendant suffered no prejudice from those deviations, and we affirm the judgment of the trial court.

## FACTS

From the evidence favorable to the verdicts and relevant to the issues on appeal, we construct the following factual summary.

The defendant owed almost $5,000 to the victim, James Harris. The defendant had trouble repaying the money, and, on at least one occasion, the defendant and the victim argued about the debt.

Jack McWhorter was an acquaintance of the defendant. McWhorter had a reputation as a violent man, and the defendant said he feared him "because of the things Jack had told me he had done—killing people and blowing up things." On numerous occasions McWhorter told the defendant he could take care of his problem with the victim but that he needed $1,500. A week before the crimes occurred, McWhorter told the defendant "he was broke and he was going to take care of my problem." The defendant told McWhorter "to take care of my problem any way he wanted."

---

1. The sentences on Count I and II were ordered to be served concurrently; the sentence on Count III consecutively.

Early in the afternoon of Sunday, July 23, 1989, McWhorter and James Wheeler arrived at the defendant's home. Defendant, his wife, and their son were present. At approximately 2 p.m., the victim arrived. The victim testified he and the defendant had arranged a meeting on that day at which the defendant would pay the victim what he owed. When the victim arrived, he did not see McWhorter who was in the bathroom. Shortly after the victim's arrival, the defendant's wife and son departed for a baseball tournament.

Within a short time, McWhorter came up from behind the victim and put a .25 caliber automatic pistol to his head. The defendant watched as Wheeler and McWhorter taped the victim's hands behind his back, his arms across his shoulders, and his legs together with duct tape from the defendant's kitchen. McWhorter forced the victim to lie on the floor and kicked him twice in the head. McWhorter and Wheeler threatened and otherwise verbally abused the victim. At one point, Wheeler left the house and returned with a .38 caliber revolver.

The victim pleaded with the defendant to help him. The defendant replied that he was afraid for his family and that "he had been told by people that I [the victim] was threatening to do something to him if he didn't pay back my money."

McWhorter asked the defendant if he had any gasoline; the defendant replied he thought he had "half a can." McWhorter picked up a set of keys from the kitchen table and asked who they belonged to. The defendant said they were the victim's.

Wheeler and McWhorter dragged the victim from the house and placed him in the trunk of his own car. When McWhorter saw that the victim had freed his hands from the tape, he shot him four times and shut the trunk lid. McWhorter and Wheeler then drove off in the victim's car. The defendant had obtained a gas can, but,

when he witnessed the shooting, he dropped it. He then followed the victim's car, driving Wheeler's car.

Some distance from the defendant's house, the victim, still alive and apparently free of his duct tape shackles, was able to open his trunk lid enough to see a car following closely behind. When he let the lid fly up to alert the driver of the following car, his car stopped. When he realized the defendant was driving the car behind, the victim jumped out of his car and ran into the woods.

McWhorter, Wheeler, and the defendant ran after the victim. The defendant ran past the victim but did not see him; McWhorter and Wheeler located the victim and each shot him twice. The trio then departed in the separate vehicles and reconvened along a gravel road. McWhorter asked the defendant for the gasoline can; when the defendant said he did not have it, McWhorter attempted to burn the victim's car by igniting a box of matches in it. He succeeded in burning a hole in the front seat.

In the meantime, the victim emerged from the woods and summoned help. He advised authorities that the defendant was one of his assailants. After he was arrested, the defendant gave officers two statements that were read at trial.

The victim spent approximately three weeks in a hospital for treatment of his eight gunshot wounds. He suffered permanent, serious disability as a result of the shootings.

## DISCUSSION

### Allegation of Instructional Error

In his first three points on appeal the defendant contends the trial court submitted three erroneous verdict directing instructions because it instructed on accessorial liability in the disjunctive.[2] The defen-

2. Instruction No. 5 (the first degree assault verdict director) stated, in part (with the challenged language emphasized):

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

dant argues, and the state agrees, that the evidence at trial supported verdict directing instructions incorporating MAI–CR3d 304.-04, modified by Notes on Use 7(a) rather than Notes on Use 7(c).[3] The defendant asserts that use of the wrong variation of MAI–CR3d 304.04 was prejudicial to his defense because there was no evidence that he committed the elements of any of the three offenses and, therefore, the instructions, as submitted, permitted his conviction by less than a unanimous verdict, i.e., some jurors might have believed McWhorter committed the elements of the crimes, some might have believed Wheeler did, and some might have believed the defendant did.

The state, arguing that the defendant suffered no prejudice by the use of the wrong variation of MAI–CR3d 304.04, calls our attention to the following comment at the end of Notes on Use 7:

> NOTE: Any variation in ascribing the elements of an offense to the defendant or to the other person or persons or any variation in the selection of alternatives in the paragraph following "then you are instructed that [*name of offense*] has occurred ..." shall not be deemed reversible error in the absence of any prejudice.

Several recent opinions reiterate the principle of the above-quoted note, that use of the wrong alternative from Notes on Use 7, although error, does not require reversal unless the error resulted in prejudice to the defense. *See, e.g., State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989); *State v. Franks*, 793 S.W.2d 543 (Mo.App.1990); *State v. Cannon*, 744 S.W.2d 820 (Mo.App. 1987); and *State v. Van Black*, 726 S.W.2d 429 (Mo.App.1987).

The defendant relies on *State v. Sparks*, 701 S.W.2d 731 (Mo.App.1985), and *State v. Scott*, 689 S.W.2d 758 (Mo.App.1985), to support his claim that the use of disjunctive language in the instructions was prejudicially erroneous. However, *Sparks* and *Scott* do not aid the defendant on the issue of prejudice because each involved facts, not present in the case before us, which tipped the scales toward a finding of prejudice.

In *Sparks*, all the evidence showed that Glasby (a co-defendant) shot, killed, and robbed the victim and the defendant only aided Glasby, but the instruction hypothesized that "the defendant or Keith Glasby" killed the victim. The court based its holding that the defendant was prejudiced on more than its conclusion that the instruction lacked evidentiary support.

---

First, that ... the defendant Timothy Cox *or* John McWhorter or James Wheeler knowingly caused serious physical injury to James Harris by shooting him, then you are instructed that the offense of assault in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Second, that with the purpose of promoting or furthering the commission of assault in the first degree, the defendant Timothy Cox *acted together with or aided* John McWhorter or James Wheeler in committing that offense, then you will find the defendant Timothy Cox guilty under Count I of assault in the first degree.

Instructions No. 7 (armed criminal action) and No. 10 (kidnapping) followed the same pattern as No. 5 and contained similar disjunctive language.

3. Notes on Use 7(a) to MAI–CR3d 304.04 states, in part:

Where the evidence shows the conduct of the offense was committed entirely by some-

one other than the defendant and the sole basis for defendant's liability is his aiding the other person or persons (as where the defendant is not even present but planned the offense, or where he is the lookout or driver of the getaway car in a robbery or burglary), then all of the elements of the offense should be ascribed to the other person or persons and not to the defendant.

Notes on Use 7(c) to MAI–CR3d 304.04, the variation used in this case to instruct the jury, states, in part:

Where the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense (as where the defendant is charged with burglary and the evidence shows the defendant was one of two persons, one of whom unlawfully entered the building and stole while the other remained outside as a lookout), ascribe the elements to the defendant *or* the other person or persons (emphasis in original).

Additionally, the prosecutor's final argument can be understood to invite speculation that, if Glasby, (who did not testify) had testified at trial, he would have accused defendant of shooting victim. We *therefore cannot say there was no prejudice to the defendant.*

*Id.* at 760. The record in the case before us discloses no such misleading closing argument.

In *Scott*, the defendant was convicted of receiving stolen property, a violation of RSMo § 570.080. The verdict directing instruction allowed the jury to find the defendant guilty if "the defendant, or others disposed of four (4) pregnant sows." In reversing the conviction, the court of appeals identified two sources of prejudice: a lack of evidence that the defendant "disposed" of the sows and the failure of the jury instruction to identify the "others" when their identities were clearly shown by the evidence. 701 S.W.2d at 734.

Of more recent vintage and more on point is *Van Black*, 726 S.W.2d 429, a case in which the defendant was convicted of arson. The defendant hired Danny Warden to burn his house for a share of the insurance proceeds. The defendant was not in the area when Warden set the fire, using gasoline and an ignition device the defendant provided. On appeal, the defendant contended the use of disjunctive language in the verdict directing instruction constituted reversible error. The court of appeals affirmed the conviction and stated:

> Under the verdict directing instruction, the defendant could be found guilty if he caused the fire. Or, he could be found guilty if Danny Warden caused the fire and the defendant acted together with or aided Danny Warden. Under the circumstances of this case, the jury could not have been misled by that instruction. The defendant was not prejudiced by that instruction.

*Id.* at 431. The *Van Black* rationale was followed in *Cannon*, 744 S.W.2d at 825–26, and endorsed in dictum in *Dulany*, 781 S.W.2d at 56.

Under the verdict directing instructions given in this case, the defendant could have been found guilty of the assault and armed criminal action charges if the jury believed he shot the victim, and he could have been found guilty of the kidnapping charge if the jury believed he removed the victim from the defendant's house without the victim's consent. Or, the defendant could have been found guilty of assault and armed criminal action if the jury believed McWhorter or Wheeler shot the victim and the defendant acted together with or aided them, and he could have been found guilty of kidnapping if the jury believed McWhorter or Wheeler removed the victim and the defendant acted together with or aided them.

The evidence at trial made it clear that McWhorter and Wheeler—and not the defendant—committed the elements of the three offenses charged. Moreover, there was no effort by the state to argue to the jury that the defendant shot the victim or removed him from the house. Given the evidence and argument at trial, the jury could not have been misled by the disjunctive language in the verdict directing instructions, and the defendant was not prejudiced by the instructions. *See Van Black*, 726 S.W.2d at 431.

We believe the observations of Judge Stephan in *Franks* to be particularly appropriate to this case:

> While it is true that there was insufficient evidence for the jury to have found appellant actually committed the criminal act of stabbing the victim, the disjunctive submission in the first paragraph of the verdict director is not reversible error.... From the evidence adduced at trial taken in a light most favorable to the state, the jury could reasonably infer that appellant's actions before, during and after the murder of victim manifested his complicity.... The direct and circumstantial evidence, when reviewed in its totality, reflects that appellant's own actions advanced the criminal enterprise as if he alone had committed the acts.

793 S.W.2d at 549.

Here, there was evidence that the defendant knew in advance that the victim would come to his home on the day the crimes

were committed. The defendant told McWhorter, whom he knew to be a violent man, "to take care of my problem any way he wanted." The defendant was present at all times while McWhorter and Wheeler committed the crimes. He identified the victim's car keys for McWhorter and obtained gasoline at McWhorter's direction, although he neglected to take the gasoline when he left to follow the others. The defendant, driving Wheeler's car, followed McWhorter, Wheeler, and the victim, and, when the victim escaped from the trunk and ran into the woods, the defendant joined the others in an attempt to find him.

Thus, although there was no evidence that the defendant shot or kidnapped the victim, the evidence, viewed in its totality, reflects that the defendant's own actions "manifested his complicity" and "advanced the criminal enterprise as if he alone had committed the acts." *See Franks,* 793 S.W.2d at 549.

The defendant's only specific assertion of prejudice is that the use of the disjunctive language permitted a less than unanimous jury verdict. This argument is without merit. It is sufficient that the jury was, as here, unanimous in its belief that the defendant was guilty. *See Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979), where the court observed:

> Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed.... [I]t is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged. To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant

actually participated, even though all agree that he was, in fact, a participant. 280 N.W.2d at 292–93. *See also State v. Marks,* 721 S.W.2d 51, 54[1] (Mo.App.1986); *State v. Esker,* 658 S.W.2d 49, 53[3, 4] (Mo.App.1983).

We reject the defendant's first three points on appeal.

*Allegation of Defective Information*

In the defendant's fourth point, he asserts, "The amended information did not allege all of the essential elements of the offense of kidnapping in Count III thereof, in that it did not allege that the removal of the victim was for the purpose of inflicting physical injury on the victim...." As the defendant correctly points out, Count III of the amended information, an otherwise faithful reproduction of MACH–CR 19.20, omits the word *physical.*

The defendant's challenge to the information must be examined in the light of the purpose of an indictment or information. Our supreme court, in *State v. Gilmore,* 650 S.W.2d 627 (Mo. banc 1983), set out the following two-fold purpose:

> to inform the accused of the charges against him so that he may prepare an adequate defense and plead former jeopardy in the event of acquittal; and to permit the trial court to decide whether sufficient facts are alleged to support conviction. The first purpose exists to protect the due process rights of the accused; the second provides the basis for the court's subject matter jurisdiction.

*Id.* at 628.

Rule 23.01 reflects the central role of factual allegations in an information in its requirement that "(b) The indictment or information shall: '... 2. State plainly, concisely, and definitely the essential facts constituting the offense charged....' "

An information is sufficient under *Gilmore* and Rule 23.01(b)2 if it alleges facts necessary to establish all the statutory elements of the offense and it clearly apprises the defendant of the facts that constitute the offense. *State v. Turner,* 705 S.W.2d 108, 109 (Mo.App.1986); *Gilmore,* 650

S.W.2d at 628; *State v. Brown,* 660 S.W.2d 694, 698 (Mo. banc 1983).

The elements of kidnapping are set out in § 565.110, RSMo 1986:

1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found . . . for the purpose of
. . . .

    (5) Inflicting physical injury on . . . the victim. . . .

The defendant argues that, as a result of the absence of the word *physical* from Count III of the amended information, the information "failed to advise [him] of the nature and cause of the accusation made against him."

■ The defendant erroneously treats Count III of the information as if it existed in isolation, to be read without reference to the other two counts of the information. Missouri has departed from the common law rule that each count in an information or indictment must be a complete indictment in itself. *Fults v. State,* 779 S.W.2d 688, 689 (Mo.App.1989). Rule 23.01(d) permits allegations made in one count of an information to be incorporated by reference into another count. Although Count III does not contain language that specifically incorporates by reference allegations made in Counts I or II, such language is not always necessary. *See Fults,* 779 S.W.2d at 689, *State v. Westrich,* 800 S.W.2d 78, 80 (Mo.App.1990).

In Count I, the information charges that the defendant, acting alone or with others, "attempted to kill or cause serious physical injury to James Harris by shooting him in the head with a pistol, and in the course thereof inflicted serious physical injury to James Harris." In Count II, the information charged that the defendant, acting alone or with others, "committed the foregoing felony of Assault in the First Degree by, with and through the use, assistance

and aid of a dangerous instrument, to wit: a pistol." Read as a whole, the amended information alleges facts sufficient to charge the offense of kidnapping and to apprise the defendant of facts constituting the offense. Thus the sufficiency test set out above is met.

Supreme Court Rule 23.11 provides: "No . . . information shall be invalid . . . because of any defect therein which does not prejudice the substantial rights of the defendant." In this case, where the information, read in its entirety, alleged facts sufficient to charge the offense and to apprise the defendant of facts constituting the offense, the defect in Count III did not prejudice the substantial rights of the defendant. *See Fults,* 779 S.W.2d at 689.[4]

The defendant's fourth point is rejected. The judgment is affirmed.

All concur.

---

4. *State v. Schaeffer,* 782 S.W.2d 68 (Mo.App. 1989), and *State v. Price,* 772 S.W.2d 9 (Mo.App. 1989), each of which limits the applicability of Rule 23.11, are distinguishable. Each case involved a one count indictment or information in which the state failed to allege an element of

the crime sought to be charged. Thus essential allegations were absent from the indictment and information when each was read in its entirety. Here, as in *Fults,* the entire information alleges facts to establish all elements of the offense.