STATE of Missouri, Respondent,

v.

Doyle FRANKS, Appellant.

Doyle FRANKS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 55028, 56841.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 1990.

Application to Transfer
Denied Sept. 11, 1990.

**544**

Susan Lynn Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Elizabeth L. Ziegler, Asst. Attys. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Doyle Franks appeals from the judgment of the trial court following his conviction by a jury of second degree murder as defined then by § 565.004, RSMo 1978 (repealed effective October 1, 1984). The trial court sentenced him as a prior and persistent offender to life imprisonment with his sentence to run consecutively to a sentence previously imposed in a different case. Doyle Franks also appeals the judgment of the trial court denying his Rule 29.15 motion without an evidentiary hearing. The two appeals have been consolidated. We affirm.

The sufficiency of the evidence to support appellant's conviction is not in dispute.

We relate the evidence in a light most favorable to the verdict. Appellant, Reginald Griffin, Arbary Jackson, Wyvonne Mozee, Paul Curtis and James Bausley, the victim, were all inmates at the Moberly Training Center for Men in Moberly, Missouri. A dispute concerning Bausley's television set triggered a fight resulting in Bausley's murder. On July 11, 1983, Bausley told Mozee that he had lent his television set to "Bo", another inmate, who had sold it to Griffin for fifty dollars. Bausley asked Mozee to help look for the set. Mozee checked the rooms along his wing, with no success.

The next day, on July 12, 1983, Bausley told Mozee he had made a deal to buy back his television from Griffin. Shortly after looking in Griffin's room for the television, Bausley and Mozee encountered Griffin and appellant. In a heated exchange, Griffin told Bausley he was changing the terms of the deal and wanted an additional forty dollars because Griffin had also given "Bo" a gold chain for the television. Appellant asked Mozee how he was involved. Mozee answered that he was trying to avoid further confusion and to get the television back. Appellant told Mozee to keep out of the argument; Mozee told appellant to do likewise.

Mozee and Bausley left, went to an old gymnasium to work out and talk. Mozee advised Bausley to report the situation to prison officials. Bausley headed toward the prison captain's office.

Shortly after Bausley left the gym, Mozee saw Griffin walk through the gym, accompanied by Jackson, appellant, and another inmate, "Static Steve" Taylor. Mozee followed them out of the gym, but stopped briefly to speak with another inmate. Once outside, he saw the group standing around Bausley arguing. Bausley was facing Griffin. Jackson and appellant were on either side of Griffin. Jackson tried to grab Bausley, but Bausley broke free. Both Mozee and Paul Curtis, another inmate who was watching the fight from a different spot, witnessed Griffin stab Bausley in the chest with a homemade

knife. Bausley collapsed and the others fled from the yard.

Curtis later testified he saw both Jackson and appellant grab at Bausley and that Griffin punched Bausley in the back. Bausley then turned to face Griffin, and Griffin stabbed him. Curtis never saw appellant make any physical contact with Bausley. According to Mozee, appellant kicked Bausley in the face after Bausley had fallen to the ground.

Bausley died almost immediately. Appellant was placed in administrative segregation that same day. On July 15, he gave prison officials a statement that he had been present in the yard when Bausley was stabbed and had heard the argument about the television, but did not see the stabbing. In a second interview on August 25, 1983, he told another investigator that he had been in the immediate area and had seen the crime, that he knew who stabbed Bausley, but would not identify him.

Paul Curtis was also placed in administrative segregation on an unrelated matter. From July 19 to August 3, 1983, Curtis was in the room next to appellant's cell. During their time in administrative segregation, the two inmates would converse through a hole in the wall between their cells. Curtis asked appellant why Bausley was stabbed. Appellant replied that Bausley had come to get his television back, that they ran him off, and told him not to come back. When he did return, they killed him. Appellant called it a "force play", and, according to Curtis, tried to represent that he killed Bausley. After Curtis told appellant he saw Griffin stab Bausley, appellant told Curtis to keep his mouth shut.

Curtis, appellant, and the other inmates involved in the stabbing were later transferred to the Missouri State Penitentiary. Capital murder charges for the death of Bausley were eventually filed against appellant. A jury found him guilty of second degree murder.

Appellant has raised three issues on his direct appeal. His first point asserts the trial court erred in refusing his request to give a manslaughter instruction. His second point avers the trial court erred in denying his motion to dismiss based on the state's failure to prosecute his case in timely fashion. His final point claims the second degree murder instruction, as given, was improper.

■ Appellant's first point contends the trial court erred in refusing to submit his proffered instruction on conventional manslaughter.[1] Appellant's point fails for several reasons. First, the instruction which appellant tendered at trial was based on MAI–CR2d 15.18 for conventional manslaughter. The instruction concerning culpable negligence which appellant argues the evidence supports is based on MAI–CR2d 15.20. Appellant did not request at trial or in his motion for new trial an instruction patterned on MAI–CR2d 15.20. Any allegation of failing to instruct on manslaughter based on culpable negligence has not been properly preserved for appellate review under Rules 28.03 and 29.11(d). Thus, we review only for plain error whether the trial court's failure to give an instruction based on MAI–CR2d 15.20, Manslaughter: Culpable Negligence, affected appellant's substantial rights resulting in manifest injustice or miscarriage of justice. Rule 29.12(b).

■ Appellant argues the evidence showed that appellant did not act with the purpose to cause the death of or to do serious physical injury to the victim and that appellant caused the victim's death by culpable negligence, through his reckless disregard of the substantial and unjustifiable risk that his fellow inmate might stab the victim. Appellant's argument confuses MAI–CR2d 15.20 and MAI–CR2d 15.18. The distinction between the two instructions was clearly drawn in *State v. Ericson*, 638 S.W.2d 806 (Mo.App.1982). In

---

1. Although the instruction in the legal file indicates that it is patterned after MAI–CR2d 15.14, that particular pattern instruction addresses second degree murder. A comparison of the tendered instruction with the patterned instructions reflects appellant's requested instruction actually follows MAI–CR2d 15.18 on conventional manslaughter, and not MAI–CR2d 15.14 for second degree murder.

*Ericson,* Judge Smith eruditely observed as follows:

> Sec. 565.005, RSMo 1978, creates only one crime of manslaughter which is a killing of a human being by 'the act, procurement or culpable negligence of another.' Sec. 565.031, RSMo 1978, provides one range of punishment for manslaughter. The statute does not create separate crimes of manslaughter. MAI–CR 15.18 is to be used when manslaughter must be instructed on as a lesser included offense, ... MAI–CR 15.20 is to be used only when the manslaughter as charged in the information or indictment is by culpable negligence. MAI–CR 15.-18 is sufficiently broad to encompass all aspects of the crime of manslaughter; MAI–CR 15.20 is a more refined instruction limited to the specific charge of manslaughter arising from culpable negligence.

*Id.* at 807–08.

The information here charged appellant with capital murder, not manslaughter by culpable negligence. We find no error, plain or otherwise, in not instructing the jury on manslaughter by culpable negligence under MAI–CR2d 15.20.

■ In addition, no instruction based on MAI–CR2d 15.18 was warranted. Under the statutory scheme applicable at the time the homicide was committed in 1983, to reduce murder to conventional manslaughter required some evidence of sudden provocation sufficient to indicate an absence of deliberation and malice. *State v. Anding,* 752 S.W.2d 59, 60–62 (Mo. banc 1988). The substantive law did not require the automatic submission of manslaughter instructions in all homicide cases. *Id.* at 62. A manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant. The only possible evidence here of sudden provocation is that the group of men were arguing with the victim at the time of the stabbing. No evidence shows the victim's state of mind or that he advanced toward appellant in a threatening manner. On the contrary, the state's eyewitnesses said the victim had turned away from his assailants. The evidence did not support a finding that appellant's actions in the victim's killing were caused by the victim's provocation. The trial court properly refused the tendered manslaughter instruction. Point denied.

Appellant's second point asserts the trial court erred in denying his motion to dismiss for failure to prosecute. He states nearly four years elapsed from the date of the victim's death in July 1983 to 1987 when appellant was charged with the victim's death. He argues the delay prejudiced him because two former inmates could no longer be found at time of trial to be witnesses for him. The record does reflect both prisoners had been released by the time appellant was charged and were unable to be located to appear for his trial.

■ Pre-prosecution delay by the state may violate a defendant's constitutional right to due process of law. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1974). A charge must be dismissed if it is shown that the delay caused substantial prejudice to defendant's rights to a fair trial and that the delay was "an intentional device to gain tactical advantage over the accused." *Id.* Appellate review of the trial court's finding of lack of prejudice must stand unless it is found to be clearly erroneous. *State v. Barrett,* 710 S.W.2d 489, 490 (Mo.App.1986).

■ Appellant has failed to meet either prong of the *Marion* test. Appellant does not indicate the nature of the possible testimony of one of the two missing witnesses. Appellant states that the other witness, the inmate in whose room the victim's television was found, would likely have information on why the television was in his room and that such information could be beneficial to him. However, we find appellant's conjecture that the testimony of either of these two former inmates would be of a beneficial nature to be highly speculative and a far cry from demonstrating substantial prejudice to his rights.

The record amply supports a determination that the delay was not an intentional device to gain tactical advantage over the accused. The prosecutor for Randolph County was managing his office virtually

single-handedly, receiving only about ten hours assistance per week from his predecessor in office. Just nine days prior to the murder in this case, a prison uprising in which a prison guard was killed had also occurred within his jurisdiction. Having no capital murder prosecution experience, he intended to second chair the Attorney General's Office of the State of Missouri on the prison uprising trials in order to handle the present capital murder case. He testified he did not intend to delay the present case in 1983 to gain any tactical advantage. His efforts were further undermined by personal problems in March 1984 when his six-month old daughter was in an accident, developed a hemotoma in her head requiring several surgeries, and subsequently lost her kidney function. The severe health problems of the prosecutor's daughter persisted through 1985 and 1986, complicating his professional commitment. He finally obtained a full-time assistant in August 1985, and decided in early 1986 to contact the Attorney General's office about handling the case. The Attorney General's office accepted the referral in May 1986. Formal charges were initiated within the next year against appellant and he was convicted after a trial in April 1988. Considering all the foregoing circumstances, the trial court's decision in overruling appellant's motion to dismiss was not clearly erroneous. We deny appellant's second point.

■ Appellant's third point declares the trial court committed reversible error in submitting Instruction No. 7, the verdict director on second degree murder. We review this claim for plain error under Rule 29.12(b) because appellant failed to raise this issue in his motion for new trial; thus, the point was not properly preserved for appellate review. Rule 29.11(d). The test for plain error regarding instructions is that the trial court so misdirected or failed to instruct the jury on the law of the case that manifest injustice results. *State v. Thompson*, 781 S.W.2d 247, 248 (Mo.App. 1989).

Instruction No. 7, patterned after MAI–CR3d 304.04 and MAI–CR2d 15.14 provided as follows:

If you do not find the defendant guilty of capital murder as submitted in Instruction No. 5, you must consider whether he is guilty of murder in the second degree under this instruction.

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 12, 1983, in the County of Randolph, State of Missouri, the defendant Doyle Franks or Arbary Jackson or Reginald Griffin caused the death of James Bausley by stabbing him, and

Second, that the defendant Doyle Franks, intended to take the life of or cause serious bodily harm to James Bausley, and

Third, that the defendant Doyle Franks, did not do so in anger suddenly provoked by the unexpected acts or conduct of James Bausley

then you are instructed that the offense of murder in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that murder in the second degree, the defendant Doyle Franks, acted together with or aided Arbary Jackson or Reginald Griffin in committing that offense,

then you will find the defendant guilty of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Appellant contends the disjunctive use of "Doyle Franks or Arbary Jackson or Reginald Griffin" in the first paragraph and the singular references to Doyle Franks in the second and third paragraphs were not supported by the evidence. Appellant states that, absent evidence appellant committed these elements of second degree murder, the jury was permitted to speculate on "conduct appellant might have done which was not supported by the evidence". Appellant acknowledges that the evidence in this case may have shown that he aided the acts of Griffin and Jackson; however, he emphasizes no evidence demonstrated that appellant actually stabbed the victim, intended to take the victim's life or cause him serious bodily harm, or that appellant's response was not provoked by the victim's unexpected conduct.

Appellant recapitulates trial evidence that appellant was with Griffin during Griffin's argument with the victim earlier in the day before the murder and that appellant told the victim's friend Wyvonne Mozee to stay out of the dispute. Although Paul Curtis thought, as he witnessed the murder, that appellant appeared to have "grabbed at" the victim, he did not see appellant have any actual, physical contact with the victim. Appellant emphasizes evidence that appellant was present when Griffin stabbed the victim and that about two weeks later appellant told Paul Curtis that the stabbing had been a "force play". Paul Curtis testified as follows concerning this conversation he had with appellant:

A. He said—I asked him why they killed the guy. And he said, ah, the guy had came to him to get his TV back from them and they run them off once and told him not to come back and he came back again so they killed him. He said it was a force play. He was trying to come across like he had done it. And I told him, 'Quit trying to act like a big guy 'cause I seen Reggie stab the guy.' And he told me, 'Yeah, well, keep your mouth shut.'

2. The preliminary hearing testimony was admitted because Mozee had died prior to appellant's

Mozee and Curtis, the two prison inmates who witnessed the murder, testified unequivocally that Griffin alone had the knife and stabbed the victim. Mozee's testimony included his statement that he had told a prison official investigating the murder that he saw someone, but was not sure who, kick the victim in the face after the stabbing. At the preliminary hearing Mozee identified appellant as the person who had kicked the victim after he had fallen to the ground.[2]

The state does not dispute this evidence, but focuses on the testimony of Paul Curtis that appellant tried to take credit for actually stabbing the victim during their conversation about the murder being a "force play". On the basis of this testimony the state argues the evidence was in fact unclear or conflicted about who actually stabbed the victim, so that the disjunctive submission was proper. The state adds that appellant was actively involved in the initial argument concerning the return of the victim's television. The state concludes that this evidence, coupled with appellant's presence at, and subsequent flight from, the murder scene, warranted the instruction.

The *Notes on Use to MAI–CR3d 304.04* are helpful in answering the issue before us of the propriety of the instruction as given. Note 6 provides in part that "MAI–CR3d 304.04 is applicable when the evidence shows that the defendant acted together with another person in the commission of an offense, or in any manner aided another person in the commission of an offense." Note 7 states as follows:

There are almost an infinite number of variations in factual situations involving accessorial liability. However, the evidence in most cases will involve one of four situations. First, where the evidence shows the offense was committed entirely by someone other than the defendant and the sole basis for defendant's liability is that he aided the other person(s); second, where the evidence

trial.

shows the defendant acted with one or more persons and they jointly committed the offense; third, where the evidence is not clear or conflicts whether the defendant simply aided (and did not by his own conduct commit any elements of the offense) or acted jointly with another person or persons (and by his conduct committed some or all of the elements of the offense); and fourth, where the evidence shows the conduct constituting the elements of the offense was committed solely by the defendant and there is also evidence showing someone aided the defendant.

. . . .

. . . in cases of accessorial liability when MAI–CR3d 304.04 is used, the particular elements of the offense (as set out in the verdict director for that offense) must be ascribed to the particular person (or persons) as supported by the evidence and that person will not always be the defendant.

■ The state's argument relies on example (c) to Note 7. Example (c) illustrates the third situation that where the evidence is not clear or conflicts on which person engaged in the conduct constituting the offense, the elements of the offense should be ascribed to the defendant or other person or persons. We disagree that this case falls within example (c). Note 7 expressly states that each element *must* be ascribed to the particular person as supported by the evidence. The verdict director here instructed the jury to find either "Doyle Franks, or Arbary Jackson or Reginald Griffin caused the death of James Bausley by stabbing him." The state's own evidence, by two eyewitnesses, was clear that Griffin, not appellant, stabbed the victim. This evidence alone renders the instruction given erroneous.

The critical inquiry is whether such error constitutes reversible error. The *Notes on Use* expressly provide that "[a]ny variation in ascribing the elements of an offense to the defendant or the other person or persons or any variation in the selection of alternatives in the paragraphs following

'then you are instructed that [name of offense] has occurred . . .' shall not be deemed reversible error in the absence of prejudice." *Notes on Use to MAI–CR3d 304.04, Note 7(d)*. The prejudicial effect is to be judicially determined. Rule 28.02(f). Thus, the determinative issue is whether the error in the instruction so affected appellant's substantial rights that it amounted to manifest injustice. *State v. Scott*, 700 S.W.2d 173, 177 (Mo.App.1985).

While it is true that there was insufficient evidence for the jury to have found appellant actually committed the criminal act of stabbing the victim, the disjunctive submission in the first paragraph of the verdict director is not reversible error. When the aider is found to have purposely aided in capital murder and thus has the same intent of the active participant, all other things being equal, the aider is liable to the same degree as the active participant. *State v. Dulany*, 781 S.W.2d 52, 56 (Mo. banc 1989). From the evidence adduced at trial taken in a light most favorable to the state, the jury could reasonably infer that appellant's actions before, during and after the murder of victim manifested his complicity. He was actively involved in the argument over the return of the television set. He was present at the murder. A state's witness testified that appellant "grabbed at" the victim before the stabbing and kicked him after the victim had fallen to the ground. Appellant fled from the scene of the murder. Finally, in appellant's conversation with Paul Curtis, appellant acknowledged the murder had been a "force play". The direct and circumstantial evidence, when reviewed in its totality, reflects that appellant's own actions advanced the criminal enterprise as if he alone had committed the acts. *Accord, Dulany*, 781 S.W.2d at 56. Thus, while we recognize the instruction was flawed, we are unable to conclude the error so affected appellant's substantial rights that manifest injustice resulted. Finding no plain error, we deny appellant's point.

■ Appellant raises one point challenging the denial of his Rule 29.15 motion without an evidentiary hearing. He states that his allegations his attorney was inef-

fective for failing to investigate the background of Arbary Jackson and Reginald Griffin, the other two inmates involved in the stabbing episode, and for failing to present evidence of their reputations and propensity for violence in the guilt and sentencing phase of his trial were not clearly refuted by the record. As such, he claims he should at least have been given a hearing on his motion.

In its findings of fact and conclusions of law, the motion court ruled that "there is no showing of facts either by the record or by Movant's motion that the 'backgrounds' of these two individuals were not known or investigated or could have been discovered through investigation. It is worthy to note that there was extensive discovery in this case by both sides."

Our review is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *Taylor v. State*, 782 S.W.2d 741, 743 (Mo.App.1989). Such findings and conclusions are deemed clearly erroneous if, after a review of the entire record, we are left with a definite and firm impression that a mistake has been made. *Abrams v. State*, 698 S.W.2d 15, 17 (Mo. App.1985). Finally, no evidentiary hearing is required under Rule 29.15 "if the court shall determine the motion and the files and records of the case conclusively show the movant is entitled to no relief." Rule 29.15(g).

Appellant's motion did not specify what information his attorney failed to discover concerning the reputation and propensity for violence of both Griffin and Jackson. The record does reflect trial counsel was diligent in undertaking discovery and in representing his client. The motion court did not err in denying an evidentiary hearing on appellant's Rule 29.15 claim. Point denied.

The judgment is affirmed.

HAMILTON, P.J., and CARL R. GAERTNER, J., concur.