**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Jerome MORRIS, Defendant/Appellant.**

**No. ED 91532.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 26, 2009.

Gwenda Renee' Robinson, Saint Louis, MO, for Appellant.

Christopher A. Koster, Shaun J. Mackelprang, Jayne T. Woods, Jefferson City, MO, for Respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Jerome Morris (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of unlawful use of a weapon, Section 571.030,[1] and felony resisting arrest, Section 575.150, and sentence of two consecutive terms of four years' imprisonment based on the trial court's finding that Appellant was a prior and persistent offender. We affirm.

*Factual and Procedural Background*

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Viewed in the light most favorable to the verdict, the evidence presented at trial is as follows.

At approximately 9:30 p.m. on January 24, 2005, Officers Durand Brassfield (Brassfield) and Larry Dampier (Dampier) were on patrol when they received a call for a disturbance at the St. Louis Fish and Chicken restaurant at Goodfellow and Lillian Streets in St. Louis. Brassfield and Dampier drove to the location and found Appellant and a woman sitting next to one another on the curb against the building, arguing. Dampier walked over to talk to the woman and Brassfield asked Appellant to come forward with his identification. Appellant fished around in his pocket but then fled around a corner before Brassfield could exit the patrol car. Brassfield chased Appellant, and when he caught up with Appellant, Appellant pointed an old rusty revolver at him. Brassfield yelled, "Gun," ducked and drew his own gun. Brassfield then yelled to Appellant to drop his gun and trained his gun on Appellant, who turned and threw the revolver gun over the roof of a shed connected to the building. Brassfield ordered Appellant down on the ground and told him not to move.

Dampier then approached Appellant and tried to handcuff him, while Brassfield holstered his gun. Appellant began struggling with Dampier, and kicked Brassfield in the shin several times when Brassfield attempted to assist Dampier. Eventually, the officers were able to get Appellant on his stomach and handcuff him. Dampier informed dispatch that they had "an armed suspect with a gun who just pulled one on an officer." Other officers arrived. The woman with whom Appellant had been arguing returned to the scene with Appellant's mother, who yelled at the officers and tried to push through them to Appellant.

Appellant and Brassfield both went to the hospital for injuries they sustained in the altercation. Brassfield suffered from a large contusion on his right shin from Appellant's kicking him. Appellant suffered from a fracture to his left orbital bone, swelling in his left eye, and a large hematoma in his left eye.

Appellant's gun was recovered from the alley behind the shed where he had thrown it. The gun was a .32 caliber revolver, fully loaded and fully operable when test-fired.

On January 25, 2005, the State filed a complaint alleging that Appellant had committed the offenses of unlawful use of a weapon and resisting arrest on January 24, 2005. On July 1, 2005, the trial court dismissed the case for lack of probable cause. On November 30, 2005, Appellant was indicted, as a prior felony offender, for unlawful use of a weapon and resisting arrest for the January 24, 2005 incident, and a warrant was issued for his arrest that same day. On October 24, 2005, Appellant pled guilty in federal court to pos-

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

session of ammunition arising from the same incident. Appellant was sentenced and remained in federal custody from November of 2005 until October 24, 2007. On October 25, 2007, the St. Louis Metropolitan Police Department executed the arrest warrant issued on November 30, 2005.

On December 18, 2007, Appellant filed a *pro se* request for a speedy trial pursuant to Section 545.780. On April 21, 2008, Appellant, by counsel, filed a motion to dismiss the charges due to a violation of his right to a speedy trial, alleging that his right was violated by the delay between the issuance and execution of the arrest warrant. Specifically, the motion alleged that "[a]t all times since the date of the alleged offense, January 24, 2005, the defendant has been in the custody of the Medium Security Institution, or free on bond in this jurisdiction, or at the St. Louis City Justice Center, or in Federal Prison." Appellant alleged that he was prejudiced by the delay in executing the arrest warrant because it delayed the date on which he received notice of the pendency of the case; he is no longer able to locate Kathy Matthews (Matthews), a material witness (purportedly the woman with whom Appellant had been arguing); he is no longer able to locate Officer Mark Karpinski (Karpinski), who helped process the alleged crime scene; and he is no longer able to identify and locate other material witnesses who were present at the alleged crime scene on January 24, 2005. The trial court denied the motion.

The State amended the indictment to charge Appellant as a persistent felony offender, and Appellant's trial began on April 22, 2008. At trial, Appellant admitted portions of his medical records and called his mother to testify in his defense. Appellant's mother testified that she witnessed more than three police officers beating Appellant while he was down on the ground, and that the officers were threatening Appellant and "egging" one another on to "bust" Appellant in the face, on the leg, and on the ankle. Appellant's mother testified that one of the officers whom she believed to be the captain asked Appellant, "You gonna pull another gun on my officers?"

Appellant's mother also testified that she tried to move closer to Appellant, but the officers stopped her, and that when the beating stopped, Appellant looked like a "monster," with one of his eyes swollen shut, and his t-shirt bloody and wet. Appellant's mother testified that Appellant told her that the officers had poured liquor on his open wounds.

During the instruction conference, Appellant proffered a self-defense instruction pursuant to MAI–CR3d 306.22. The trial court refused the instruction, finding that it was inappropriate under the instruction's Notes on Use and Missouri case law.

On April 23, 2008, the jury found Appellant guilty of both counts. At the sentencing hearing, the trial court allowed the State, over Appellant's objection, to prove Appellant to be a prior and persistent felony offender. On June 13, 2008, the trial court sentenced Appellant to four years' imprisonment on each count, to be served consecutively. This appeal follows.

### Points Relied On

In his first point, Appellant maintains that the trial court erred in denying his motion to dismiss his case for violation of his right to a speedy trial because the intentional delay between the courts issuance of an arrest warrant on or about November 30, 2005, and the execution of that warrant on October 25, 2007, prejudiced Appellant's right to a fair trial.

In his second point, Appellant asserts that the trial court erred in denying his

motion to dismiss his case for violation of his right to a speedy trial because Appellant timely invoked his constitutional right to a speedy trial *pro se* and the 2–year, 4–month, and 23–day delay from the filing of the indictment to the time of his trial was presumptively prejudicial, even after excluding any delay attributable to Appellant.

In his third point, Appellant alleges that the trial court erred in allowing the State to prove Appellant was a prior and persistent felony offender after the jury rendered its verdict, because Section 558.021.2 provides that all facts necessary to establish prior and persistent offender status "shall be pleaded, established and found prior to submission to the jury outside of its hearing"; erred in erroneously marking boxes on Appellant's written sentence and judgment finding that Appellant was convicted after a plea of guilty and that Appellant is a prior and persistent offender under Section 577.023; and deprived Appellant of his statutory right to jury sentencing without due process of law. Appellant asserts that this Court should remand for resentencing, or in the alternative, correct Appellant's sentence.

In his fourth point, Appellant states that the trial court erred and abused its discretion in refusing his self-defense instruction, Instruction A based on MAI–CR3d 306.22, on the resisting arrest charge because Appellant presented substantial evidence that he used physical force to protect himself from the officer's use of excessive force in arresting him, and the trial court's error affected the jury's verdict.

## Discussion

### Speedy Trial—Points I and II

■ Appellant's first point asserts delay between issuance and execution of the arrest warrant. His second point asserts delay between indictment and trial. Only

Appellant's first point is preserved for review, as it was presented to the trial court for its review. Appellant's second point was not. Therefore, it will be reviewed for plain error only.

■ Pre-prosecution delay by the State may violate a defendant's constitutional right to due process of law. *State v. Franks*, 793 S.W.2d 543, 546 (Mo.App. E.D.1990), *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). A charge must be dismissed if it is shown that the delay caused substantial prejudice to defendant's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. *Franks*, 793 S.W.2d at 546, *Marion*, 404 U.S. at 324, 92 S.Ct. 455. Appellate review of the trial court's finding of lack of prejudice must stand unless it is found to be clearly erroneous. *Franks*, 793 S.W.2d at 546.

■ Due process claims of pre-accusation delay are to be scrutinized closely for actual prejudice and should not be loosely interpreted. *Dillard v. State*, 931 S.W.2d 157, 163 (Mo.App. W.D.1996). Missouri and other courts have made it clear that both prongs of the due process test set out in *Marion* must be met in order to find a Fifth Amendment violation. *Id.* at 163–64. *See State v. Griffin*, 848 S.W.2d 464, 467–68 (Mo.banc 1993) (an inexcusable delay of over three years still does not justify dismissal where the defendant does not show actual prejudice and intentional tactics); *State v. Clark*, 859 S.W.2d 782, 786 (Mo. App. E.D.1993) (both *Marion* factors must be shown).

■ Appellant's crimes occurred on January 24, 2005. He was indicted on November 29, 2005. A warrant was issued on that indictment, but was not executed until October 24, 2007. Appellant asserts

a pre-accusation delay in violation of the Fifth Amendment based upon the time that elapsed between the issuance and execution of the arrest warrant. However, Appellant became accused when the indictment was issued. The indictment rendered him accused for purposes of his right to a speedy trial, despite when he was arrested. The period for speedy trial right commences upon the filing of the indictment or information or arrest, whichever occurs first. *State v. Holmes,* 643 S.W.2d 282, 285 (Mo.App. W.D.1982), *Marion,* 404 U.S. at 313, 92 S.Ct. 455.

With regard to Appellant's claim of pre-prosecution delay, the charges against him must be dismissed if it is shown that the delay caused substantial prejudice to his right to a fair trial and that the delay was an intentional device to gain tactical advantage over Appellant. *Franks,* 793 S.W.2d at 546, *Marion,* 404 U.S. at 324, 92 S.Ct. 455. Our review of the trial court's finding of lack of prejudice must stand unless it is found to be clearly erroneous. *Franks,* 793 S.W.2d at 546.

■ The reason Appellant's trial was delayed was because he was in federal prison. There is no evidence in the record that the delay was an intentional act to get some tactical advantage over Appellant. Appellant's trial on the state charges began within six months of his release from federal prison. Furthermore, Appellant did not make a request for a speedy trial until two years after his indictment on the state charges. Finally, Appellant has not shown any prejudice from the delay. He was notified of the charges when he was indicted on November 29, 2005. Neither Matthews nor Karpinski were material witnesses. Matthews fled before any of the altercation between Appellant and the police officers took place. Appellant himself testified that the only people present during the arrest were himself, Dampier and Brassfield. Karpinski helped process the scene along with Dampier, who was present for trial. Appellant's mother was also present for trial.

Appellant does not indicate the nature of the possible testimony of Matthews, Karpinski, or the other unspecified material witnesses. We find Appellant's conjecture that the testimony of Matthews or Karpinski would be of a beneficial nature to be highly speculative and a far cry from demonstrating substantial prejudice to his rights. Appellant has failed to meet either prong of the *Marion* test.

Accordingly, for the foregoing reasons, Points I and II are denied.

### Prior and Persistent Offender Status—Point III

■ Appellant concedes that defense counsel did not preserve this assignment of trial court error for appellate review, and therefore requests plain error review under Rule 30.20.[2] Rule 30.20 provides, in pertinent part, that plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted. *State v. White,* 247 S.W.3d 557, 561 (Mo.App. E.D. 2007). The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *Id.* In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *Id.* Plain error for purposes of Rule 30.20 is error that is evident, obvious and clear. *Id.*

---

**2.** All rule references are to Mo. R. Crim. P. 2008, unless otherwise indicated.

"An unauthorized sentence affects substantial rights and results in manifest injustice." *Drennen v. State*, 906 S.W.2d 880, 882 (Mo.App. E.D.1995). "Where [a] defendant has been improperly sentenced as a prior or persistent offender, a manifest injustice has occurred and it is appropriate for plain error." *State v. Dixon*, 24 S.W.3d 247, 250 (Mo.App. E.D. 2000).

In the instant case, the record demonstrates that Appellant's prior and persistent felony offender status was not proven until after the jury rendered its verdict, in violation of Section 558.021.2.[3] However, the record also shows that Appellant waived his right to be sentenced by a jury. Appellant waived his statutory right to a jury-recommended sentence where he allowed the judge to determine his sentence without raising his right to have the jury recommend a sentence. *State v. Emery*, 95 S.W.3d 98, 102–03 (Mo. banc 2003). Appellant chose to sit on his statutory right. *Id.* at 103. He cannot now be deemed entitled to a jury-recommended sentence. *Id.* He has waived that right. *Id.*

Furthermore, Appellant was not prejudiced because he was sentenced within the range for a Class D felony, a maximum of four years. Section 558.011.1(4). Appellant could have been sentenced to an enhanced range of punishment of up to seven years for a Class C felony due to his persistent offender status, under Section 558.016.7(4). But he was not.

However, even though Appellant has failed to prove prejudice with respect to his sentences because the sentences imposed by the trial court did not exceed the unenhanced statutory range the trial court could have imposed had it properly sentenced Appellant only as a prior offender, pursuant to *State v. McGee*, 284 S.W.3d 690, 713 (Mo.App. E.D.2009), we recognize that there are "other possible ramifications of [Appellant's] sentence as a [prior and] persistent offender, such as the possibility of it affecting his future parole,'" and therefore, while we decline to remand for re-sentencing, we will correct the judgment and sentence to reflect sentencing as a prior offender only. *McGee*, quoting *State v. Halk*, 955 S.W.2d 216, 217 (Mo. App. E.D.1997); Rule 30.23. We need not remand the case when we can appropriately correct the sentence. *State v. Williams*, 797 S.W.2d 734, 738 (Mo.App. W.D.1990). Accordingly, we correct the judgment and sentence to reflect Appellant's status as a prior offender only. Rule 30.23.

Based on the foregoing, Point III is granted in part and denied in part.

### Self–Defense Instruction—Point IV

In determining whether a refusal to submit an instruction was error, the evidence is viewed in the light most favorable to the defendant. *State v. Avery*, 120 S.W.3d 196, 200 (Mo.banc 2003). "'If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it.'" *Id.*, quoting *State v. Westfall*, 75 S.W.3d 278, 280 (Mo.banc 2002). A self-defense instruction must be submitted "when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony." *Avery*, 120 S.W.3d at 200. Failure to submit a self-defense instruction when required by the evidence constitutes reversible error. *Id.* "Substantial evidence" is evidence putting a matter in issue. *Id.*

---

**3.** Section 558.021.2 provides that in finding prior and persistent felony offender status "[i]n a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of its hearing...."

There is no right to resist a known police officer who is making an arrest even when that arrest is unlawful. *State v. Maxey*, 661 S.W.2d 641, 642 (Mo. App. E.D.1983). At common law there existed a right to resist an unlawful arrest with as much force as necessary to prevent it. *Id.* That is no longer the law of Missouri. *Id., State v. Thomas*, 625 S.W.2d 115, 121–23 (Mo.banc 1981). Our courts have recognized that chaos would result and there would be a breakdown of law enforcement if persons were allowed to fight, resist or assault known police officers upon the arrestee's belief, or even knowledge, that the arrest is unlawful. *Maxey*, 661 S.W.2d at 642.

"Self-defense is simply not a defense to resisting arrest." *State v. Hernandez*, 651 S.W.2d 187, 189 (Mo.App. W.D.1983). In accord, MAI–CR3d 306.22 Notes on Use 3(a) (use of force in resisting excessive force by a known law enforcement officer making an arrest is not justified if defendant resisted or threatened to resist arrest); Section 563.031.1(3) (person may ... use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself, unless ... [t]he actor was attempting to commit, committing, or escaping after the commission of a forcible felony).

For the foregoing reasons, Point IV is denied.

### Conclusion

The trial court's judgment is affirmed as modified.

ROBERT G. DOWD, JR., P.J., and CLIFFORD H. AHRENS, J., concur.