

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103341 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| DEON A. WILLIAMS, | ) | Honorable Timothy J. Wilson |
| | ) | |
| Appellant. | ) | Filed: November 1, 2016 |

## OPINION

Deon A. Williams ("Williams") appeals the circuit court's judgment convicting him of attempted forcible rape, two counts of sodomy in the first degree, two counts of attempted sodomy in the first degree, and two counts of incest, and sentencing him to eighteen years' incarceration. We correct a clerical error in the judgment, which incorrectly classified Williams as a prior and persistent offender, and we affirm the sentence and judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts established at trial and viewed in the light most favorable to the judgment are as follows: Williams sexually abused his biological daughter, G.W., multiple times when she was twelve or thirteen years old. The abuse started after G.W. moved out of her mother's home and went to live with Williams at a house on Plover. Williams lived on Plover with his two daughters, G.W. and D.W., and his mother, the girls' grandmother.

1

At trial, the evidence established four separate incidents of inappropriate touching by Williams. The first incident occurred when G.W. was in bed trying to go to sleep because she had school in the morning. Williams came into the room and told G.W. to turn around. When she turned around, Williams' exposed penis was in her face. He then grabbed her head, forced his penis into her mouth, and made her perform oral sex on him. Williams then climbed on top of G.W., started taking her nightgown off, and tried to put his penis inside her vagina. Williams' penis touched her thighs, but he was unable to penetrate her. G.W. tried to stop her father by kicking him, but he did not stop until he heard the grandmother knock on the door. As Williams left the room, he told G.W., "Don't tell nobody."

The second incident occurred later that year when G.W. was still twelve or thirteen years old. G.W. was again in bed one night, and Williams put his fingers inside her vagina. In order to get away, G.W. got up and went to the bathroom. She then went to sleep with her grandmother instead of returning to her bed. There was evidence that this was not the first time Williams put his fingers in his daughter's vagina. G.W. testified this happened about "half the time I was living with him until I said something about it."

After these initial incidents of abuse, Williams and his daughters moved in with his girlfriend.[1] They lived there until Williams and his girlfriend got into a fight, and Williams put his girlfriend's head in the toilet. Thereafter, Williams and his daughters moved back to the house on Plover. About two weeks after that, Williams tried to put his fingers in G.W.'s vagina ("third incident"). It is unclear whether he was successful. Then, the next day, Williams tried to put his fingers in her vagina again, but she stopped him ("fourth incident").

---

[1] Williams also abused G.W. while they were living with his girlfriend. This abuse is not at issue because the house was located outside City of St. Louis jurisdiction.

2

After the fourth incident, G.W. told her sister, D.W., about the abuse. D.W. encouraged her to tell their grandmother. The grandmother said she would watch Williams more carefully to see if anything was happening, but she did not call the police or tell the girls' mother about the abuse.

Eventually, D.W. called their mother and told her about the abuse. The mother immediately intervened, and the police got involved. G.W. was taken to the hospital where she was examined and interviewed by a social worker. G.W. was also taken to the Children's Advocacy Center where she was interviewed by a forensic interview specialist who specialized in childhood sexual abuse.

G.W. did not report the abuse earlier because Williams told her not to tell anyone, and she was scared of him. Williams also threatened to kill G.W.'s mother if G.W. ever told her about the abuse. G.W. believed her father's threats because "[h]e would just be crazy every time he was drunk, [he would] hit us and stuff [and] take out all his anger on us for no reason." Williams often beat his daughters when he drank.

Williams was arrested and indicted on seven felony counts: Count I, attempted forcible rape, in violation of section 566.030;[2] Counts II and V, statutory sodomy in the first degree for penis-to-mouth contact, in violation of section 566.062; Counts III and VI, statutory sodomy for hands-to-genitals contact, in violation of section 566.062; and Counts IV and VII, incest, in violation of section 558.011. The State filed a Substitute Information in Lieu of Indictment ("Substitute Information"), adding the phrase "a second time" at the end of Counts V, VI, and VII to indicate they were based on separate incidents from Counts II, III, and IV. Prior to trial, the court discussed these changes, noting "the State has slightly adjusted some of the wording" in the Substitute Information. The court stated, "I don't believe this changes anything as far as what the

---

[2] All statutory references are to RSMo (2000) unless otherwise indicated.

defendant was on notice of what he was facing [sic]." Defense counsel agreed with the court and made no objection. Williams never requested a bill of particulars.

Williams waived his right to a jury trial, and the case proceeded to trial before the court. The State presented the testimony of G.W., D.W., and five other witnesses. The prosecution argued that G.W. was credible, her testimony was consistent, and it proved that Williams was guilty beyond a reasonable doubt. Williams argued there was insufficient evidence to convict because G.W.'s testimony was not corroborated, that G.W. was a liar inventing "incredible stories with a lot of inconsistencies" that could not possibly be true, and that G.W. was actually abused by another man she lived with previously, but accusing her father instead to get out of living with him. Williams did not testify.

During trial, Williams moved for a judgment of acquittal at the close of the State's evidence, and renewed this motion at the close of all the evidence. His sole argument in both motions was that the evidence was insufficient to convict him of the charges.

The court found G.W. credibly testified to four separate incidents of abuse. The first incident, Williams put his penis in G.W.'s mouth and then attempted to rape her. The second incident, Williams put his fingers in G.W.'s vagina. The third and fourth incidents, Williams attempted to put his fingers in G.W.'s vagina after they returned to the house on Plover. The court convicted Williams of Counts I, II, III, IV, and VII as charged, and convicted Williams on Counts V and VI of the lesser-included offense of attempted sodomy. Williams filed a motion for new trial, arguing only that the court erred in denying the earlier motions for acquittal. The court denied the motion.

The Substitute Information classified Williams as a prior and persistent offender, listing seven prior felony convictions. The State failed to introduce evidence of these prior convictions

4

during the trial. The trial court did not make findings that Williams was a prior and persistent offender.

Prior to sentencing, the court ordered a Sentencing Assessment Report ("SAR"),[3] which detailed Williams' criminal history, including the seven prior felonies identified by the State in the Substitute Information. The court made the SAR available to the parties. Defense counsel asked the court to follow the SAR's recommendation and impose a sentence of "somewhere around fifteen years," arguing that "due to the nature of the charges and [Williams'] background, fifteen years would be a reasonable sentence."

The Court sentenced Williams to the following terms of imprisonment: Count I (attempted forcible rape), fourteen years; Counts II and III (statutory sodomy), fourteen years on each count; Count IV (incest), four years; Counts V and VI (attempted statutory sodomy), fourteen years on each count; Count VII (incest), four years. All sentences were concurrent except for Count IV, which was consecutive, making the aggregate sentence eighteen years. On the judgment form, the court checked the boxes indicating that Williams was found guilty as a prior and persistent offender, in violation of section 558.016. This appeal follows.

## POINTS ON APPEAL

Williams raises four points on appeal. In point one, Williams argues that the trial court erred in finding him guilty on Counts V (attempted sodomy), VI (attempted sodomy), and VII (incest) because the Substitute Information did not contain sufficient detail to put him on notice of the charges against him, which violated his right to due process. In points two and three, Williams

---

[3] Under Rule 29.07, the probation officer is required to conduct a pre-sentencing investigation in all felony cases and submit a Sentencing Assessment Report to the court prior to sentencing. *See State v. Sanchez*, 217 S.W.3d 923, 925 (Mo. App. S.D. 2007).

All rule references are to Missouri Supreme Court Rules (2015) unless otherwise indicated.

argues that the trial court erred in admitting evidence of uncharged misconduct involving D.W. and Williams' girlfriend. In point four, Williams argues that the trial court plainly erred in classifying him as a prior and persistent offender in the absence of sufficient evidence or findings of fact to support this classification. As to points one, two, and three, we affirm. As to point four, the State concedes this was a clerical error and we agree.

## DISCUSSION

Williams concedes that he did not raise the issues in points two, three, and four to the trial court, and requests plain error review. Additionally, we find that Williams failed to raise the issue in point one to the trial court. Therefore, none of Williams' points have been preserved for appeal, and our review is limited to plain error review.

### Standard of Review

To preserve a constitutional issue for appellate review, it must be raised at the earliest opportunity consistent with good pleading and orderly procedure, and must be properly preserved throughout the proceeding, or this court's analysis is limited to plain error review. *State v. Wickizer*, 583 S.W.2d 519, 523 (Mo. banc 1979); *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

Plain error review under Rule 30.20 is discretionary and involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315–16 (Mo. App. W.D. 2005). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. *Id.* Unless the error is obvious, evident, and clear from the face of the claim, the appellate court should exercise its discretion and decline to review the claim. *Id.* If plain error is found, then the appellate court may proceed to the second step, whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.* In order to demonstrate that a

6

manifest injustice has affected his or her substantial rights, the appellant "must go beyond a mere showing of demonstrable prejudice." *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc 1993). The plain error rule should be used sparingly and will not justify review of every point that has not been preserved for appellate review. *State v. Tokar*, 918 S.W.2d 753, 769 (Mo. banc 1996).

## I.    Point One – Due Process Right to Sufficient Notice of the Charges

In his first point, Williams argues for the first time on appeal that the trial court erred in convicting him of Counts V, VI, and VII because these counts accused him of the same behavior as Counts II, III, and IV, only adding the phrase "a second time" to distinguish the charges, which violated his right to due process. We disagree.

Due process protects a criminal defendant from being convicted of an offense that he was not expressly charged with in the information or indictment. *State v. Collins*, 154 S.W.3d 486, 494 (Mo. App. W.D. 2005) (citing *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999)). This right is guaranteed both by the Sixth Amendment of the U.S. Constitution as applied to the states through the Due Process Clause of the Fourteenth Amendment, and by Article I, section 18(a) of the Missouri Constitution. *Id.* The purpose of an indictment or information is to place the defendant on notice of the charges against him so that he may prepare an adequate defense, prevent retrial on the same charges in the event of acquittal, and allow the trial court to determine whether sufficient facts are alleged to support the conviction. *Williams v. State*, 205 S.W.3d 300, 306 (Mo. App. W.D. 2006). Pursuant to Rule 23.01(b)(2), "[t]he indictment or information shall . . . state plainly, concisely, and definitely the essential facts constituting the elements of the offense charged, including facts necessary for any enhanced punishment." Accordingly, the charging document is legally sufficient if it alleges facts establishing all the elements of the charged offense, fairly

7

informs the defendant of the charges, and enables the defendant to plead double jeopardy to prevent future prosecution for the same offense. *State v. Love*, 88 S.W.3d 511, 515 (Mo. App. S.D. 2002).

In this case, Williams did not file a pre-trial motion challenging the sufficiency of the information as required by Rule 24.04(b).[4] Nor did he file a motion for a bill of particulars seeking more information about the charges against him, as allowed under Rule 23.04.[5] Thus, we are bound by the Supreme Court of Missouri's holding in *State v. Parkhurst*, where the Court held:

> When [an objection to the sufficiency of the charges] is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information or indictment is insufficient unless the defendant demonstrates *actual prejudice*.

*State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992) (emphasis added); *see also* Rule 23.11 ("An indictment or information shall not be invalid, nor shall the trial, judgment, or other proceedings on the indictment or information be stayed, because of any defect that does not prejudice the substantial rights of the defendant.").

Notably, Williams does not argue that the information was insufficient because it failed to reasonably charge the offenses of which he was convicted. We find that the information sufficiently identifies the offenses and states specific factual allegations constituting the elements of each offense, as required by Rule 23.01(b)(2). Thus, Williams is only entitled to relief under *Parkhurst* if he can prove that the failure to provide more details concerning the charges actually

---

[4] Under Rule 24.04(b), any objection based on a defect in the indictment or information, except for a claim that it fails to establish the court's jurisdiction, "*must* be raised" by motion before trial, or it is waived. Rule 24.04(b)(2) (emphasis added); *see also State v. Parkhurst*, 845 S.W.2d 31, 33 (Mo. banc 1992).

[5] Under Rule 23.04, when an indictment or information is legally sufficient but fails to contain sufficient detail to allow the defendant to prepare his defense, the defendant may file a motion requesting a bill of particulars to set forth the details of the offense, which generally must be filed within ten days of the arraignment. Rule 23.04; *see also State v. Celis-Garcia*, 420 S.W.3d 723, 727 (Mo. App. W.D. 2014).

prejudiced his ability to prepare a defense or plead former jeopardy in the event of acquittal. *See id.*

First, it is clear from the record that Williams was aware of the charges against him and that the Substitute Information was not so defective that it prejudiced his ability to prepare a defense. Williams' defense at trial was a general denial of all culpability. He attacked the victim's credibility by arguing that she was lying about everything and merely making up these allegations to get out of living with him. This defense was not undermined by Williams' contention that the information charged multiple offenses within the same period of time without alleging any specific fact to distinguish one offense from the other. Williams' argument that G.W. invented the allegations would have been equally effective whether or not the State alleged more details to distinguish the separate offenses. *See State v. Price*, 940 S.W.2d 534, 537 (Mo. App. E.D. 1997) (where the defendant argued that he was not involved in the offense at all, there was no prejudice from the fact that the indictment charged attempted rape while his conviction was for the completed crime because his defense was equally effective against either offense) (distinguished on unrelated grounds by *State v. Paro*, 952 S.W.2d 339, 343 (Mo. App. E.D. 1997)).

Second, the Substitute Information does not prevent Williams from pleading double jeopardy in the event the State attempts to prosecute him again for these same offenses. The information states specific offenses, a particular victim, a precise address, and a definite period of time, merely alleging that three of the offenses occurred "a second time" within the specified period of time. The fact that an information charges multiple counts using identical language does not invalidate the charges so long as the record as a whole is sufficient to clarify what conduct is the basis of each charge. *See, e.g.*, *State v. Martin*, 852 S.W.2d 844, 856 (Mo. App. W.D. 1992) (identical language used in multiple counts of the same information does not invalidate either

9

count); *State v. Riggs*, 770 S.W.2d 361, 362 (Mo. App. E.D. 1989) (affirming a conviction where the indictment used identical language in multiple counts because "[t]his record protects defendant [sic] from prejudice because it adequately clarified the charges to prevent any possible 'double jeopardy' issue which could arise in the future").

In addition, the trial court's findings and judgment provide substantial additional details that allow Williams to establish which specific incidents of sodomy and incest are the basis of his convictions. The court clearly identified four very specific incidents where Williams sexually abused G.W. The first and second incidents occurred after G.W. initially moved into the house on Plover and before relocating to the girlfriend's house. The third and fourth incidents occurred within two weeks after G.W. moved back into the house on Plover. These details are sufficient to clarify what the charges were referring to by the statement "a second time." Therefore, we find the Substitute Information was sufficient, and Williams suffered no actual prejudice concerning his ability to plead double jeopardy.

Williams cites Rule 23.01(b)(3) for the proposition that when "multiple counts [of an indictment or information] charge the same offense on the same date or during the same time period, additional facts or details to distinguish the counts shall be stated." Williams argues that merely adding the phrase "a second time" to Counts V, VI, and VII was insufficient to satisfy the requirements of Rule 23.01(b)(3). This argument fails, however, because it is a statutory challenge to the sufficiency of the information, which was waived when Williams failed to file a motion either challenging the sufficiency of the charges under Rule 24.04(b) or requesting a bill of particulars under Rule 23.04. *See Parkhurst*, 845 S.W.2d at 35; *see also State v. Cunningham*, 863 S.W.2d 914, 919 (Mo. App. E.D. 1993). Williams' failure to file either motion constituted a waiver of all arguments attacking the sufficiency of the charges unless he establishes that the charges were

10

so defective that they actually prejudiced his ability to prepare a defense or plead former jeopardy, and prevent subsequent prosecution for the same offense. *Id.* As explained above, Williams failed to show he suffered any actual prejudice. Therefore, under *Parkhurst*, Williams would not be entitled to relief even if the charges lacked sufficient detail to comply with the requirements of Rule 23.01(b)(3). *Id.*

Moreover, Williams expressly agreed that he was on notice of the charges against him. On the morning of trial, the trial court addressed the sufficiency of the Substitute Information by calling Williams' attention to the fact that "the State has slightly adjusted some of the wording" by adding the phrase "a second time" to the end of Counts V, VI, and VII to distinguish them from Counts II, III, and IV. The court then stated, "I don't believe this changes anything as far as what the defendant was on notice of what he was facing [sic]." Williams' defense counsel stated he had received a copy of the Substitute Information, and he agreed with the judge that this wording did not deprive Williams of notice of the charges against him. Williams then proceeded to trial without requesting a bill of particulars or objecting to the sufficiency of the charges.

We find that the trial court did not plainly err because Counts V, VI, and VII in the Substitute Information provide sufficient notice of the charges to comport with the requirements of due process because all the essential elements of each offense charged were clearly set out in the Substitute Information. We find that the charges contained sufficient detail to allow Williams to prepare his defense and plead double jeopardy to prevent retrial on the same offense. Therefore, Williams has failed to meet his burden of showing that he suffered a manifest injustice or miscarriage of justice. Point one is denied.

11

**II.    Points Two and Three – Admissibility of Evidence of Williams' Uncharged Misconduct**

In his second and third points on appeal, Williams argues that the trial court plainly erred by admitting evidence of uncharged misconduct involving D.W. and Williams' girlfriend because it was inadmissible. We disagree.

The standard of review for the admission of evidence is abuse of discretion. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). However, Williams concedes that points two and three were not preserved, thus we review only for plain error.

To be admissible, evidence must be both logically and legally relevant. *State v. Sanders*, 481 S.W.3d 907, 914 (Mo. App. E.D. 2016). Evidence is logically relevant if it tends to make the existence of a material fact more or less probable than it would be without that evidence. *Id.* Evidence is legally relevant if its probative value outweighs the risk of unfair prejudice, confusing of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.*

It is a well-established general rule that evidence concerning a defendant's commission of crimes separate and distinct from the charged offenses is not admissible "unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (quoting *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008)). Evidence of uncharged misconduct is absolutely inadmissible if offered solely for the purpose of showing that the defendant has a propensity to commit the crime charged because this would violate the defendant's right to be tried only for the crimes charged under Article I, sections 17 and 18(a) of the Missouri Constitution. *State v. Ellison*, 239 S.W.3d 603, 606, 608 (Mo. banc 2007).

However, such evidence may be admissible if offered for another purpose, including but not limited several established exceptions.

12

Such evidence may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial. In addition, evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired.

*Primm*, 347 S.W.3d at 70 (citations and internal quotations omitted); *see also State v. Miller*, 372 S.W.3d 455, 474 (Mo. banc 2012). In addition to these established exceptions, evidence of uncharged misconduct may also be admissible if otherwise "logically and legally relevant." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Courts have found evidence of a defendant's other crimes to be admissible when offered to corroborate the testimony of a minor victim in prosecutions involving crimes of a sexual nature to explain why the victim did not report the crime earlier. *Miller*, 372 S.W.3d at 474.

In this case, Williams challenges the admission of evidence that he beat D.W. and put his girlfriend's head in a toilet during a fight. This is classic evidence of uncharged misconduct, which would be inadmissible if offered solely for the purpose of proving that Williams has a criminal propensity. *Primm*, 347 S.W.3d at 70.

However, Williams waived his right to a jury trial, and instead chose to have a bench trial. Therefore, we start our analysis with the presumption that the trial judge was not confused or misled by any allegedly irrelevant or inadmissible evidence unless the record clearly demonstrates that the trial court considered and relied upon the inadmissible evidence. *State v. Girardier*, 484 S.W.3d 356, 364–65 (Mo. App. E.D. 2015); *State v. Ernst*, 164 S.W.3d 70, 74–75 (Mo. App. S.D. 2005).

At trial, there was substantial evidence that Williams was violent and abusive towards D.W. During the State's case-in-chief, the prosecutor asked G.W., "Did you have any problems with your dad?" She responded, "Well, every time when he was getting drunk, he used to hit my

13

sister." The prosecutor then explored this topic at some length. In response to Williams' questions, G.W. testified to further details, including the fact that Williams sometimes beat D.W. so hard it caused "bleeding bruises." Later D.W. herself testified about her father's drinking, how it caused him to become violent and abusive towards her, and how he sometimes used a belt when he beat her. There was also evidence that Williams acted violently towards his girlfriend by putting her head in a toilet during an argument.

We need not address the admissibility of this evidence because we find there is no evidence that the court relied on the evidence in reaching its judgment. *See Girardier*, 484 S.W.3d at 365 (holding that "regardless of the admissibility of [the evidence]," appellant could not show any prejudice because he failed to show the trial court relied on the allegedly inadmissible evidence in finding him guilty). Even if this evidence was inadmissible, Williams has the burden of establishing that the trial court improperly used the evidence and relied on it when reaching its judgment, which he has failed to do. *See id.* Williams has not identified any instance in the record where the court relied on or even mentioned any of Williams' uncharged misconduct in reaching its decision, and we have found none.

Therefore, we find the trial court did not plainly err because there is no evidence that the trial court improperly relied upon Williams' uncharged misconduct in reaching its judgment. Points two and three are denied.

## III. Point Four – Insufficient Evidence of Prior and Persistent Offender Classification

In his fourth point, Williams concedes his argument was not preserved for appeal and requests plain error review. *Wickizer*, 583 S.W.2d at 523; *Baxter*, 204 S.W.3d at 652. Williams argues that the trial court plainly erred by classifying him as a prior and persistent offender because the State failed to introduce evidence of these prior convictions at trial. Williams asks that the

14

judgment be corrected and that the case be remanded for resentencing. The State concedes it failed to introduce any evidence of these conviction as required by section 558.021, but argues that resentencing is not necessary because this error did not affect the sentencing.

The parties concede, and we agree, that the trial court plainly erred in classifying Williams as a prior and persistent offender. Improperly sentencing a defendant as a prior or persistent offender is a manifest injustice that warrants reversal on plain error review. *See State v. Morris*, 285 S.W.3d 407, 414 (Mo. App. E.D. 2009) ("An unauthorized sentence affects substantial rights and results in manifest injustice."); *State v. Dixon*, 24 S.W.3d 247, 250 (Mo. App. E.D. 2000).

Under Rule 30.23, the appellate court may correct clerical errors in a judgment and finally dispose of a case without remanding the case "[u]nless justice otherwise requires." Rule 30.23. "We need not remand the case when we can appropriately correct the sentence." *State v. Morris*, 285 S.W.3d 407, 414 (Mo. App. E.D. 2009) (citing Rule 30.23 for the authority to correct a judgment to remove persistent offender classification without remanding the case; finding that the error did not prejudice defendant because he was sentenced within the unenhanced range, and affirming the judgment as modified).

There is no basis in the record for finding that the erroneous prior and persistent offender classification was anything other than a clerical error. "Generally, a mistake on the written judgment and sentence form 'involving the marking of boxes designated for memorializing a finding of a defendant's prior and persistent offender status is considered a clerical mistake.'" *Warren v. State*, 429 S.W.3d 480, 481 (Mo. App. E.D. 2014) (citing *State v. Gibbs*, 306 S.W.3d 178, 183 (Mo. App. E.D. 2010)).

When the trial court made its oral pronouncement that Williams was guilty, the court did not classify Williams as a prior and persistent offender. Although the written sentencing form

includes this classification, the oral pronouncement governs. *State v. Johnson*, 864 S.W.2d 449, 451 (Mo. App. W.D. 1993) (when an oral pronouncement conflicts with a written judgment, the oral pronouncement controls and the written judgment is erroneous). While the record indicates that the trial court was influenced by Williams' criminal record, there is no indication that the court gave Williams a more severe sentence due to the erroneous prior and persistent offender classification. Williams received a sentence within the unenhanced sentencing range for his convictions. *See Morris*, 285 S.W.3d at 414; *see also State v. Clark*, 197 S.W.3d 598, 601–02 (Mo. banc 2006), cert. denied, 549 U.S. 1167 (2007) (proof of prior crimes need only be proven beyond a reasonable doubt when they are used as a basis to enhance a sentence beyond the ordinary sentencing range).

We reject Williams' argument that resentencing is required due to the trial court referencing his criminal history at the sentencing hearing. The court was permitted to consider Williams' criminal history when sentencing him whether or not Williams was classified as a prior and persistent offender. *See State v. Sanchez*, 217 S.W.3d 923, 925 (Mo. App. S.D. 2007). Prior to sentencing, the court ordered a SAR, which detailed Williams' criminal history. The SAR was made available to the parties. Williams requested the court follow the SAR, arguing its recommended sentence was reasonable "due to the nature of the charges and [Williams'] background." Rule 29.07 clearly provides "authority for the court to make use of the presentence investigation [SAR] as discretion indicates." *Sanchez*, 217 S.W.3d at 925 (quoting *State v. Maloney*, 434 S.W.2d 487, 496 (Mo. 1968) (per curiam)). In fact, the court must consider the defendant's criminal history upon sentencing. *See* section 557.036.1 ("Upon a finding of guilt upon verdict or plea, the court *shall* decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense

and *the history and character of the defendant* and render judgment accordingly.") (emphasis added).

Therefore, we find reversal for resentencing is not required because Williams' sentence was not affected by this clerical error. Accordingly, we correct the judgment and sentence to remove Williams' classification as a prior and persistent offender. Point four is granted in part and denied in part.

## CONCLUSION

We hold that: (1) the trial court did not plainly err in convicting Williams of Counts V, VI, and VII because the Substitute Information provided sufficient notice of the charges against Williams, and Williams suffered no actual prejudice that prevented him from preparing a defense or pleading former jeopardy in the event of acquittal; (2) the trial court did not plainly err because there is no evidence the trial court relied upon Williams' prior uncharged misconduct in reaching its judgment; and (3) the trial court plainly erred by classifying Williams as a prior and persistent offender; however, we correct the clerical error without remanding the case, finding no prejudice because it did not affect Williams' sentence.

Accordingly, we order the July 9, 2015 Judgment and Sentence form corrected to reflect that Williams was not found to be a prior and persistent offender. Williams' sentence of eighteen years' incarceration is not otherwise amended or modified by this Opinion. We affirm the trial court's judgment of conviction and sentence as modified.

_____
Angela T. Quigless, P.J.

Robert G. Dowd, Jr., J., and
Lisa S. Van Amburg, J., Concur.

17